UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>STEVEN SURAJ VACHANI,<br><br>    Defendant. | Case No. 17-CV-03184-LHK<br><br>**ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE**<br><br>Re: Dkt. No. 1 |

The instant case arises from the motion of Plaintiff Facebook, Inc. ("Facebook") to withdraw the reference to bankruptcy of Adversary Proceeding No. 13-4226 against Defendant Steven Vachani ("Vachani"), which is now pending before Bankruptcy Judge Roger L. Efremsky. Civ. ECF No. 1-1.[1] Pursuant to Bankruptcy Local Rule 5011-2(b), upon filing of the motion for withdrawal of reference in the Bankruptcy Court, the motion was assigned a new civil case

---

[1] In the instant order, the Court refers to docket entries from four separate cases. The Court refers to docket entries in the case *Facebook, Inc. v. Power Ventures, Inc.*, Case No. 08-CV-05780, as "*Power* ECF No. X." The Court refers to docket entries in the underlying bankruptcy, *In re Vachani*, Case No. 12-47150, as "Bankr. ECF No. X." The Court refers to docket entries in the Adversary Proceeding, *Facebook, Inc. v. Vachani*, Adv. Proc. No. 13-04226, as "Adv. ECF No. X." Finally, the Court refers to docket entries in the instant civil case assigned after filing of the motion for withdrawal of reference, *Facebook, Inc. v. Vachani*, Case No. 17-CV-03184, as "Civ. ECF No. X."

1

Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

number in the District Court and assigned to the undersigned judge. Having considered the briefing of the parties, the relevant law, and the record in the instant case and all related cases, the Court DENIES Plaintiff's motion for withdrawal of reference.

## I. BACKGROUND

### A. Factual Background

The instant case is related to the case *Facebook, Inc. v. Power Ventures, Inc.* ("*Power Ventures*"), No. 08-CV-05780. The instant case and the *Power Ventures* case share the same factual background. Facebook owns and operates the social networking website located at facebook.com. *Power* ECF No. 9, ¶ 2. Power Ventures ("Power") is a corporation incorporated in the Cayman Islands and doing business in California. *Id.* ¶ 10. At the times relevant to the instant case and the *Power Ventures* case, Power has operated the website www.power.com, which offered to integrate users' various social media accounts into a single experience. *Id.* Vachani is the Chief Executive Officer of power.com. *Power Ventures* Answer ¶ 11.

In December 2008, Facebook brought against Power and Vachani ("*Power Ventures* Defendants") the *Power Ventures* case, which alleges violations of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CANSPAM Act"), 15 U.S.C § 7701; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; California Penal Code § 502; and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201; copyright infringement under 17 U.S.C. § 101; trademark infringement under 15 U.S.C. §§ 1114 and 1125(a) and under California law; and violations of California Business and Professions Code Section 17200. *Power* ECF Nos. 1, 9. Facebook complained that the *Power Ventures* Defendants employed Facebook's proprietary data without its permission by inducing Facebook users to provide their login information and then using that information to "scrape" Facebook's proprietary material. *Power* ECF No. 9, ¶¶ 49, 50, 52. The *Power Ventures* Defendants then displayed Facebook's material on power.com. *Id.* ¶ 52. Facebook asserts that it never gave the *Power Ventures* Defendants permission to use its material in this way. *Id.* ¶ 54.

Facebook also accuses the *Power Ventures* Defendants of sending unsolicited and

2
Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

deceptive email messages to Facebook users. *Power* FAC ¶¶ 65-69. To launch their site, the *Power Ventures* Defendants promised power.com users a chance to win $100 if they invited and signed up the most new users to the *Power Ventures* Defendants' site. *Id.* ¶ 65. The *Power Ventures* Defendants provided to their users a list of the users' Facebook friends from which the users could choose people to whom to send the invitation. *Id.* ¶ 66. Power.com sent commercial emails to those friends that included on the "from" line a "@facebookmail.com" address. *Id.* ¶¶ 66, 68. The content of the message included a line that the message was from "The Facebook Team." *Id.* ¶ 69, 70. Facebook contends that it never gave permission to send these messages and that the emails were deceptive because they "do not properly identify the initiators of the messages, nor do they provide clear or conspicuous notice that the messages are advertisements for" power.com. *Id.* ¶ 71. The Court initially entered judgment in the *Power Ventures* case on September 25, 2013. *Power* ECF No. 374. After remand from the Ninth Circuit, the Court entered a revised judgment in the *Power Ventures* case on May 2, 2017. *Power* ECF No. 437.

As discussed below, during the pendency of the *Power Ventures* case, Vachani filed for personal bankruptcy on August 27, 2012. Bankr. ECF No. 1; *Power Ventures* ECF Nos. 353–54. As part of that bankruptcy, Facebook filed the adversary proceeding at issue here, which alleged that the debt that Vachani owed Facebook as a result of the judgment in the *Power Ventures* case was nondischargeable. Adv. ECF No. 1. On May 30, 2017, Facebook filed the instant motion for withdrawal of reference of the adversary proceeding. Adv. ECF No. 36.

**B. Relevant Procedural History of *Power Ventures***

On December 30, 2008, Facebook filed the complaint in the *Power Ventures* case. *Power* ECF No. 1. On January 13, 2009, Facebook filed a First Amended Complaint. *Power* ECF No. 9. On February 18, 2011, Judge Ware granted the parties' stipulation to dismiss Facebook's DMCA claim, copyright and trademark infringement claims, and claims for violations of California Business and Professions Code Section 17200. *Power* ECF No. 97. On May 9, 2011, Defendants moved for summary judgment on Facebook's CFAA, Section 502, and CAN-SPAM Act claims. *Power Ventures* ECF No. 98. On November 17, 2011, Facebook moved for summary judgment on

3
Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

Facebook's § 502 and CFAA claims. *Power* ECF No. 214 ("§ 502/CFAA Motion"). On November 18, 2011, Facebook moved for summary judgment on Facebook's CAN-SPAM Act claim. *Power* ECF No. 215. On February 16, 2012, Judge Ware issued an order denying Defendants' motion for summary judgment and granting summary judgment in Facebook's favor as to Facebook's § 502, CFAA, and CAN-SPAM Act claims. *Power* ECF No. 275 ("February 16, 2012 order").

In the February 16, 2012 order, Judge Ware requested additional briefing regarding Vachani's individual liability and the amount of damages Facebook should receive in light of the February 16, 2012 order. *Id.* at 19. On April 17, 2012, Facebook filed its supplemental brief regarding damages and the liability of Vachani. *Power* ECF No. 299 ("Facebook Damages/Liability Brief"). On August 15, 2012, Vachani submitted a supplemental brief regarding damages and Vachani's personal liability. *Power* ECF No. 317.

On August 27, 2012, Defendants provided notice that both Power and Vachani had filed for bankruptcy. ECF Nos. 323, 324. Noting that pursuant to 11 U.S.C. § 362(a)(1), a voluntary petition for bankruptcy operates as an automatic stay of any judicial actions involving the petitioners, Judge Ware stayed the proceedings and administratively closed the case on August 29, 2012. ECF No. 325.

On March 20, 2013, Facebook notified the Court that the Bankruptcy Court had dismissed Power's bankruptcy case and had granted Facebook's request for relief from the automatic stay in Vachani's bankruptcy case. *Power* ECF No. 327. Facebook sought to reopen the *Power Ventures* case. *Id.* Facebook also sought reassignment to a new judge because on August 31, 2012, while the automatic stay was in effect, Judge Ware resigned from the bench. *Id.* On April 8, 2013, the undersigned judge, as the Duty Judge at the time Facebook filed its motion, granted Facebook's request. *Power* ECF No. 328. The undersigned judge ordered that the stay be lifted, the case be reopened, and the case be reassigned. *Id.* The case then was reassigned to the undersigned judge. *Power* ECF No. 329.

On April 25, 2013, Vachani moved for clarification of Judge Ware's February 16, 2012

4
Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

order regarding whether Vachani's liability had been determined in the February 16, 2012 order. *Power Ventures* ECF No. 332. On April 29, 2013, the *Power* Defendants filed a case management statement in which they stated their intent to request leave to file a motion for reconsideration of the February 16, 2012 order. *Power* ECF No. 334. In Facebook's and the *Power* Defendants' respective case management statements filed on April 29, 2013, the parties acknowledged that Vachani's liability and the issues of damages and injunctive relief still needed to be addressed. *Power* ECF No. 333, 334.

On May 2, 2013, following a case management conference, the Court issued a case management order. *Power* ECF No. 340. In that order, the Court clarified that the February 16, 2012 order did not decide Vachani's liability. *Id.* The Court also set a briefing schedule for the damages and injunctive relief issues. *Id.* The Court set a hearing date of September 26, 2013 to consider Vachani's liability and the issue of remedies. *Id.*

On August 1, 2013, Power filed its request for leave to file a motion to reconsider Judge Ware's February 16, 2012 order. *Power* ECF No. 353. On August 1, 2013, Facebook filed its supplemental memorandum in support of its request for injunctive relief. ECF No. 354 ("Facebook Injunction Brief"). On September 25, 2013, Facebook filed a supplemental motion for a permanent injunction. *Power* ECF No. 369.

On August 7, 2013, Magistrate Judge Spero issued an order requiring Vachani to pay Facebook $39,796.73 as a discovery sanction because of Vachani's noncompliance during a Rule 30(b)(6) deposition. *Power* ECF No. 356. Specifically, Judge Spero found that Vachani "was not prepared for his Rule 30(b)(6) deposition, read from [a prepared] declaration, and was 'argumentative' and 'evasive.'" *Id.* at 5. In the same order, Judge Spero noted that Defendants had committed another discovery violation by failing to timely disclose relevant emails. *Id.* Following Judge Spero's order, Vachani immediately appealed the discovery sanction to the Ninth Circuit on September 6, 2013. *Power* ECF No. 360. Despite the appeal, this Court retained jurisdiction over aspects of the case unrelated to the discovery sanctions.

On September 25, 2013, the Court filed an Order Denying Leave to File Motion for

Reconsideration, Finding Defendant Steven Vachani Liable as a Matter of Law, and Granting Damages and Permanent Injunctive Relief. *Power* ECF No. 373. In the order, the Court first found that Defendants had not identified any new material facts, changes in law, or issues that Judge Ware manifestly failed to consider in his February 16, 2012 order. The Court therefore denied leave to file a motion for reconsideration of the February 16, 2012 order. *Id.* at 15. The Court also found that because Vachani directed and authorized the activities at issue, Vachani was personally liable for violations of the CAN-SPAM Act, CFAA, and California Penal Code § 502 along with Power. *Id.* at 17.

The Court then addressed the issue of damages for the first time. The Court noted that under the CAN-SPAM Act, Facebook was entitled to elect between statutory damages and monetary damages in the amount of actual losses. *Id.* at 22. Facebook elected to recover statutory damages, and the Court ordered Defendants to pay $50 for each of 60,627 spam messages sent, for a total of $3,031,350. *Id.* at 25–26. The Court then held that Facebook was entitled to compensatory damages under the CFAA. The Court held that "Facebook has established through undisputed testimony that it expended $80,543 to investigate Defendants' actions and for outside legal services in connection with the Defendants' actions." *Id.* at 26.

Finally, the Court issued a permanent injunction against Defendants that enjoined Defendants from (1) making any misleading statement in advertising, including statements that Facebook had authorized a particular communication; (2) accessing Facebook's website or servers "for any purpose" without Facebook's prior permission; (3) using any data obtained from the unlawful conduct; and (4) developing or using any software to commit the illegal acts alleged in the complaint. *Id.* at 33–34. The injunction also required Defendants to destroy all the software at issue, destroy all data obtained from Facebook with the illegal software, and take measures to ensure that the injunction was obeyed. *Id.* at 34. The Court entered judgment against the *Power* Defendants the same day, September 25, 2013. *Power* ECF No. 374.

On October 23, 2013, Defendants appealed the Court's grant of summary judgment. *Power* ECF No. 379. On November 21, 2013, the Ninth Circuit dismissed Vachani's appeal of Magistrate

6

1  Judge Spero's August 7, 2013 order granting discovery sanctions because the August 7, 2013
2  order was not final or appealable. *Power* ECF No. 386.[2]

On December 9, 2016, the Ninth Circuit affirmed in part and reversed in part this Court's grant of summary judgment. *Power* ECF No. 401. The Ninth Circuit reversed the Court's finding that Defendants had violated the CAN-SPAM Act because the Ninth Circuit found that Facebook initiated the email messages at issue and that the sender of the messages was not materially misleading within the meaning of the CAN-SPAM Act. *Id.* at 9–13. The Ninth Circuit then held that Defendants had violated CFAA, but only for the period "after receiving written notification from Facebook on December 1, 2008." *Id.* at 19. The Ninth Circuit held that by sending the December 1, 2008 notification, Facebook revoked Defendants' permission to use Facebook's computers. *Id.*

With respect to damages, the Ninth Circuit held that "[i]t is undisputed that Facebook employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to Power's actions." *Id.* at 14. However, in light of the Ninth Circuit's finding that the violation began only after Facebook sent its cease and desist letter on December 1, 2008, the Ninth Circuit remanded to "calculate damages only for the period after Power received the cease and desist letter . . . ." *Id.* at 22.

After remand, the Court held a case management conference on February 15, 2017. At the case management conference, the Court set a briefing schedule for the remanded issue of remedies. ECF No. 410. The Court also ordered Defendants to pay by March 15, 2017 the $39,796.73 discovery sanction that the Ninth Circuit affirmed.

On May 2, 2017, after briefing on the issue was complete, the Court ruled on the remanded issue of damages. *Power* ECF No. 435. The Court found that Facebook was entitled to $79,640.50 in compensatory damages. This figure did not include the $3,031,350 in CAN-SPAM damages

---

[2] Although the Ninth Circuit dismissed Vachani's earlier appeal of Magistrate Judge Spero's August 7, 2013 order granting discovery sanctions, *Power* ECF No. 386, the Ninth Circuit later affirmed the discovery sanction in its December 9, 2016 order, *Power* ECF No. 401.

Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

that were reversed by the Ninth Circuit. This figure also did not include $902.50 in damages incurred on or before December 1, 2008, when Facebook sent the cease and desist letter. Instead, this figure reflected only the damages incurred by Facebook after December 1, 2008 in responding to Defendants' CFAA violation. The Court also issued a permanent injunction against Defendants that was narrowly tailored to Defendants' CFAA violation. Finally, the Court again ordered Defendants to pay the $39,796.73 discovery sanction and denied Defendants' May 1, 2017 motion to stay. *Id.* at 31. The Court issued a judgment on May 2, 2017. *Power* ECF No. 437.

On May 16, 2017, Facebook filed a motion for attorney's fees and motion for contempt sanctions. *Power Ventures* ECF Nos. 446–47. The Court ruled on these motions on August 8, 2017. *Power Ventures* ECF No. 470. The Court granted Facebook's motion for attorney's fees and found that Vachani and Power are jointly and severally liable for the $145,028.40 attorney's fee award. *Id.* at 28. The Court also found that Power and Vachani, in his capacity as CEO of Power, were in contempt of Court for their ongoing failure to pay the $39,796.73 discovery sanction. The Court therefore ordered that after a five-day grace period, for each day that Power does not pay the $39,796.73 discovery sanction, $100 would be added to the amount owed. *Id.*

**C. Relevant Procedural History of Underlying Bankruptcy**

Defendant first filed for Chapter 13 bankruptcy on August 27, 2012. Bankr. ECF No. 1. In the bankruptcy case, Facebook made a claim for the debt Vachani owed to Facebook based on Judge Ware's February 16, 2012 grant of summary judgment in the *Power Ventures* case, although this order did not set the amount Vachani owed. Bankr. ECF No. 38. On October 18, 2012, Defendant moved the Bankruptcy Court to set the amount Vachani owed to Facebook arising from the February 16, 2012 grant of summary judgment in *Power Ventures*. Bankr. ECF No. 63. The Bankruptcy Court denied this motion on December 13, 2012 and held that it would be more appropriate for the District Court to determine Vachani's personal liability for the judgment in *Power Ventures* and thus determine the amount of Vachani's debt to Facebook. Bankr. ECF No. 98.

On January 16, 2013, Vachani filed an objection to Facebook's claim. Bankr. ECF No.

8

103. On February 13, 2013, the Bankruptcy Court granted Facebook relief from the automatic stay so that the district court could set the amount Vachani owed Facebook.[3] Bankr. ECF No. 122. On March 27, 2013, the Bankruptcy Court overruled Vachani's objection to Facebook's claim. Bankr. ECF No. 139.

On June 4, 2013, Facebook objected to Vachani's amended Chapter 13 plan. Bankr. ECF No. 167. On October 16, 2013, the Bankruptcy Court sustained Facebook's objection and dismissed Vachani's Chapter 13 bankruptcy case. Bankr. ECF No. 181. On October 22, 2013, the case was voluntarily converted from a Chapter 13 case to a Chapter 7 case. Bankr. ECF No. 183.

On November 22, 2013, the Chapter 7 trustee reported that "there is no property available for distribution from the estate . . . ." Bankr. ECF Nos. 186–87. Subsequently, Vachani was issued a discharge on January 22, 2014 and the case was closed on January 24, 2014. Bankr. ECF No. 194. However, as discussed below, despite Vachani's discharge and the closing of the case, the adversary proceeding initiated by Facebook, *Facebook, Inc. v. Vachani*, Adv. Proc. No. 13-04226, remains pending.

### D. Procedural History of Adversary Proceeding and the Motion to Withdraw the Reference

Facebook filed an adversary proceeding related to the underlying bankruptcy case on December 13, 2013. Adv. ECF No. 1. In the complaint in the adversary proceeding, Facebook alleges that Vachani's debt to Facebook was nondischargeable in Vachani's Chapter 7 case on several grounds, including willful and malicious injury, false pretenses, false representation, and actual fraud. *Id.*

Vachani filed a motion to dismiss or, in the alternative, for a more definite statement, on January 6, 2014. Adv. ECF No. 7. After briefing was complete, the Bankruptcy Court continued the hearing on Vachani's motion several times pending the Ninth Circuit's resolution of the appeal of the September 25, 2013 judgment in the *Power Ventures* case. *See, e.g.*, Adv. ECF Nos. 25, 28,

---

[3] As discussed above, the Court made this determination in an order and judgment filed on September 25, 2013. *Power* ECF Nos. 373, 374.

9
Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

30, 32, 34. The Ninth Circuit issued its mandate on December 9, 2016. *Power* ECF No. 401. On May 30, 2017, more than three years after the complaint was filed in the adversary proceeding, Facebook filed the instant motion for withdrawal of reference. Adv. ECF No. 36.

On June 2, 2017, the documents associated with the instant motion were transferred to the District Court under a new civil case number, pursuant to Bankruptcy Local Rule 5011-2(b). Adv. ECF No. 37; Civ. ECF No. 1. On June 16, 2017, the Court granted a motion to relate the instant case to *Power Ventures* and the instant case was therefore reassigned to the undersigned judge. Civ. ECF No. 10. On June 19, 2017, Vachani filed his opposition to Facebook's motion for withdrawal of reference. Civ. ECF No. 14. On June 26, 2017, Facebook filed a reply. Civ. ECF No. 15.

## II. LEGAL STANDARD

District courts have original jurisdiction over "all civil proceedings arising under title 11," which is the Bankruptcy Code, as well as over cases "arising in or related to cases under title 11." 28 U.S.C. § 1334(a)–(b). However, the district court's jurisdiction is not exclusive, and each district court may refer such proceedings to a bankruptcy judge. 28 U.S.C. § 157(a); *see also Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997). In the Northern District of California, all cases and proceedings arising in or related to a bankruptcy case are automatically referred to the Bankruptcy Court. Bankr. L.R. 5011-1(a).

There are two circumstances under which this automatic reference to the Bankruptcy Court is withdrawn for the case to proceed in district court. First, withdrawal is mandatory "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added). In other words, withdrawal is required "in cases requiring material consideration of non-bankruptcy federal law." *Sec. Farms*, 124 F.3d at 1008. While the Ninth Circuit has not further defined what constitutes "material consideration of non-bankruptcy federal law," other courts have found that mandatory withdrawal is proper only where the question of non-bankruptcy federal law "require[s] the interpretation, as opposed to mere application, of the

10

Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

non-title 11 statute." *Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990) ("[Mandatory withdrawal] is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding."); *In re Tamalpais Bancorp*, 451 B.R. 6, 8 (N.D. Cal. 2011) (collecting cases).

Second, withdrawal may be permissive. "[T]he district court may withdraw, in whole or in part, any case or proceeding . . . on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). "In determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008. For either permissive or mandatory withdrawal, "[t]he burden of persuasion is on the party seeking withdrawal." *In re Tamalpais*, 451 B.R. at 8.

### III. DISCUSSION

As discussed above, the instant case concerns an adversary proceeding in which Facebook seeks a determination that Vachani's debt to Facebook, which Vachani incurred based on the judgment in the *Power Ventures* case, is not dischargeable in Vachani's Chapter 7 bankruptcy. Facebook seeks to withdraw the reference to bankruptcy so that this Court, rather than the Bankruptcy Court, can decide whether this debt is dischargeable.

Facebook concedes that mandatory withdrawal of the reference is not warranted in the instant case, but Facebook argues that permissive withdrawal is warranted under 28 U.S.C. § 157(d). Therefore, the Court considers how withdrawal will affect "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms*, 124 F.3d at 1008.

#### A. Efficiency

In analyzing the efficiency factor, courts first consider whether the Bankruptcy Court has jurisdiction to enter final judgment for the claims at issue. *See In re Rosales*, 2013 WL 5962007, at *5 (N.D. Cal. Nov. 7, 2013) ("The efficiency inquiry requires the Court to determine whether

11

Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

the Bankruptcy Court has jurisdiction to enter final judgment."). Because bankruptcy judges are not Article III judges, "the Constitution limits their ability to adjudicate—i.e., to render a final judgment—to issues that are at the 'core' of the bankruptcy power." *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009). For matters that are "non-core," a bankruptcy judge may make only proposed findings of fact and conclusions of law to the district judge, who reviews all non-core matters *de novo*. 28 U.S.C. § 157(c)(1). Thus, whether the Bankruptcy Court can enter final judgment turns principally on whether a claim is core or non-core. *Id.* § 157.

If a claim is not core and only the District Court can enter final judgment, efficiency generally favors withdrawing the reference. *Everett v. Art Brand Studios, LLC*, 556 B.R. 437, 443 (N.D. Cal. 2016) ("If the claims sought to be withdrawn are non-core and the Bankruptcy Court can not enter final judgment, then efficiency generally favors withdrawing the reference."). In contrast, if a claim is a core claim, then the Bankruptcy Court can enter final judgment on its own and efficiency generally weighs against withdrawing the reference. *Shawmut Bank Connecticut, Nat. Ass'n v. Lawrence*, 209 B.R. 588, 590 (N.D.N.Y. 1997) ("[T]he Court finds that Plaintiff seeks to withdraw a core matter from the Bankruptcy Court. This finding weighs against withdrawing the reference . . . .").

In the instant case, the adversary proceeding at issue relates to the dischargeability of Vachani's debt to Facebook, which arose from the judgment in the *Power Ventures* case. Facebook concedes that this is a core proceeding. Indeed, 28 U.S.C. § 157(b)(2) specifically lists "determinations as to the dischargeability of particular debts" as core matters. Thus, the Bankruptcy Court can enter final judgment in the adversary proceeding in the instant case, and this fact weighs against withdrawing the reference.

Although Facebook concedes that the adversary proceeding it seeks to withdraw is core and that the Bankruptcy Court can enter final judgment on this matter, Facebook nevertheless argues that the efficiency factor weighs in favor of withdrawing the reference. In the complaint in the adversary proceeding, Facebook alleges that Vachani's debt to Facebook is nondischargeable in Vachani's Chapter 7 case on several grounds, including willful and malicious injury, false

12

Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

pretenses, false representation, and actual fraud. Adv. ECF No. 1. Facebook argues that these grounds are established by "facts found by the District Court to have been admitted by Mr. Vachani or otherwise not genuinely in dispute" in the *Power Ventures* case. Adv. ECF No. 8, at 2. Thus, because Facebook's nondischargeability argument is based on statements in this Court's orders, Facebook argues that it would be more efficient for this Court to determine the dischargeability of Vachani's debt in the first instance. Civ. ECF No. 1-30, at 7 (arguing that withdrawal is warranted because determining dischargeability requires "interpret[ing], and determin[ing] nuances and subtleties in, multiple orders of *this* Court").

However, withdrawing the bankruptcy reference for the adversary proceeding would be inefficient in a number of ways. Most importantly, the Bankruptcy Court has greater expertise in bankruptcy law and its application to the instant case. *See In re Kaiser*, 722 F.2d 1574, 1581 (2d Cir. 1983) ("There should be at least one adjudication made by a judge with expertise in bankruptcy law. There is no assurance that a better initial determination would be made by a district court."). This expertise is particularly relevant because the instant case involves a "core" bankruptcy proceeding that is "properly within the Bankruptcy Court's competence." *In re Rosales*, 2013 WL 5962007, at *7.

Additionally, according to Facebook, the facts underlying the adversary proceeding are not seriously disputed and can be determined simply by reading the text of this Court's orders. *See* Adv. ECF No. 8, at 2 (arguing that complaint in adversary proceeding is based on "facts found by the District Court to have been admitted by Mr. Vachani or otherwise not genuinely in dispute"). Indeed, in Facebook's opposition to Vachani's motion to dismiss the complaint in the adversary proceeding, Facebook provided the Bankruptcy Court with precise citations to all the relevant facts with the page and line numbers of the orders establishing those facts. *Id.* at 3–4. There are only thirteen such facts that Facebook identifies, and these facts relate only to the relatively straightforward circumstances that gave rise to the *Power Ventures* litigation. Specifically, Facebook argues that the nondischargeability of Vachani's debt is established by the following facts:

13
Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

A. Facebook notified Mr. Vachani that it appeared Power was obtaining unauthorized access to Facebook's website and servers. Facebook implemented technical measures to block Power's access to Facebook. 2012 Order 3:6-9.

B. Mr. Vachani then intentionally circumvented those barriers that were intended to prevent his access to information on Facebook's website. 2012 Order 17:3-5, 2013 Order 18:10–14

C. Once improperly by those barriers, Mr. Vachani obtained information and data from Facebook, without Facebook's permission. 2012 Order 17:3-5; 17:14–15; 18:3–5, 2013 Order 11:18–21; 19:5–10.

D. Mr. Vachani took, copied and made use of Facebook's data. 2013 Order 19:22–20:8.

E. Mr. Vachani created a software program that was intended by him to, and did, deceive Facebook, by causing Facebook's servers to send emails that appear to have originated from Facebook. Mr. Vachani designed the software program to have the effect that it did. 2012 Order 11:12–19.

F. Mr. Vachani thereby caused Facebook's servers to send at least tens of thousands of unsolicited commercial electronic mail messages, with header information and sender identification that falsely and deceptively identified the sender as Facebook. The messages were misleading. 2012 Order 3:3-6; 14:1–4 2013 Order 16:11–16.

G. These acts were committed by Mr. Vachani not only deliberately and intentionally, but also knowingly and willfully. 2013 Order 24:2–3.

H. The most serious harm of such activities is to the operators of live websites that, as a natural consequence of these activities, have to expend funds to stop the activities and deal with customer complaints. 2012 Order 6:20–7:7.

I. Facebook expended significant resources to block Mr. Vachani's and Power's spamming activity. 2012 Order 9:10–11.

J. Facebook suffered adverse effects as a consequence of Mr. Vachani's actions and his false and misleading information. 2012 Order 14:1–4; 2013 Order 28:4.

K. Mr. Vachani caused irreparable harm to Facebook's goodwill with its users. 2013 Order 28:10–12.

L. These actions violated multiple federal statutes and the California Penal Code. 2013 Order 11:17–21; 16:17–17:2.

M. As redress for the above-described acts, Mr. Vachani must pay Face book statutory damages of $3,031,350, plus $80,543 compensatory damages. 2013 Order 25:9–11; 26:9–12.

*See* Adv. ECF No. 8, at 3–4.[4]

---

[4] As this quoted excerpt makes clear, Facebook's argument that this Court is better placed to interpret its own orders is undermined by the fact that the *Power Ventures* case was not reassigned

14

Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

Thus, it appears that the adversary proceeding will not focus on developing evidence and deciding factual disputes, but instead will focus primarily on analyzing nuanced principles of bankruptcy law and deciding how those principles apply to the relatively straightforward facts of the *Power Ventures* case. Indeed, although Facebook's opposition to Vachani's motion to dismiss the adversary proceeding mentions only the thirteen relatively simple facts discussed above, the opposition contains extensive legal argument about the proper standard for intentionality under bankruptcy law, the type of property interest that is subject to the "willful and malicious" exception to dischargeability, and the five-prong test for nondischargeability based on fraud. *See id.* at 4–8. In short, it appears that legal issues predominate over factual disputes in the adversary proceeding, and the Bankruptcy Court will be able to more efficiently resolve these legal issues.

Facebook also argues that withdrawal would promote efficiency because "this Court is thoroughly familiar with the Debtor's litigation tactics." Civ. ECF No. 1-30, at 7. However, the Bankruptcy Court has presided over Vachani's "unusually complex" bankruptcy since Vachani filed his petition on August 27, 2012, and thus the Bankruptcy Court has extensive experience with Vachani as a party. Bankr. ECF No. 1; Bankr. ECF No. 167, at 4 ("This [bankruptcy] case has seen an extraordinary number of filings and events, including multiple defaults by the Debtor, dismissal and reinstatement, many, many amendments of the sworn schedules, and many proposed versions of a plan."). Indeed, the Bankruptcy Court has longer experience with Vachani as a party than the undersigned judge, to whom the *Power Ventures* case was reassigned on April 10, 2013. *Power Ventures* ECF No. 329.

Thus, it would be more efficient in the instant case for the Bankruptcy Court to decide the adversary proceeding in the first instance. As discussed above, the matter at issue is a "core" issue on which the Bankruptcy Court can enter final judgment, which "weighs against withdrawing the reference." *Shawmut*, 209 B.R. at 590. Additionally, the Bankruptcy Court has greater expertise in

---

to the undersigned judge until April 10, 2013. *Power* ECF No. 329. In Facebook's list of facts, approximately half of Facebook's citations are to the summary judgment order issued by Judge Ware on February 16, 2012, more than a year before the *Power Ventures* case was reassigned to the undersigned judge. *Power* ECF Nos. 275; 329.

bankruptcy law and has extensive experience with the parties and the facts underlying Vachani's bankruptcy. Thus, the efficiency factor weighs against withdrawing the reference.

### B. Other Factors

The Court now addresses the other considerations relevant to permissive withdrawal: avoiding delay, avoiding excessive costs, preventing forum shopping, and ensuring uniformity of the administration of the bankruptcy estate. *See Sec. Farms*, 124 F.3d at 1008 (listing these factors).

The Court finds that the "avoiding delay" factor weighs against withdrawing the reference. Resolution of the adversary proceeding has already been substantially delayed by Facebook's motion to withdraw the reference. A motion to withdraw the reference should be made "as promptly as possible in light of the developments in the bankruptcy proceeding." *Sec. Farms*, 124 F.3d at 1007 n.3 (citing *In re Baldwin-United Corp.*, 57 B.R. 751, 754 (S.D. Ohio 1985)). Facebook filed the adversary proceeding against Vachani on December 13, 2013, but Facebook waited until May 30, 2017 to file the instant motion for withdrawal of reference. Adv. ECF Nos. 1, 36. Facebook offers no explanation for its decision to wait to file the instant motion, and Facebook does not argue that the grounds for its motion were unknown or unavailable earlier.[5]

Indeed, this three year delay may make Facebook's motion untimely. *See Hupp v. Educ. Credit Mgmt. Corp.*, 2007 WL 2703151, at *2 (S.D. Cal. Sept. 13, 2007) (finding motion to withdraw the reference untimely based on 15-month delay in filing); *Laine v. Gross*, 128 B.R. 588, 589 (D. Me.1991) (finding motion to withdraw the reference untimely because the motion was filed over six months after the alleged necessity for withdrawal became apparent); *Connolly v. Bidermann Industries U.S.A., Inc.*, 1996 WL 325575, *3 (S.D.N.Y. 1996) (finding that an eight

---

[5] As discussed above, the Bankruptcy Court continued the hearing on Vachani's motion to dismiss the adversary proceeding several times pending the Ninth Circuit's resolution of the appeal of the September 25, 2013 judgment in the *Power Ventures* case. *See, e.g.*, Adv. ECF Nos. 25, 28, 30, 32, 34. However, Facebook does not claim that these continuances prevented Facebook from filing a motion to withdraw the reference. Additionally, even if this stay could explain some of Facebook's delay in filing the instant motion, it cannot explain all of the delay. The Ninth Circuit issued its mandate on December 9, 2016; yet Facebook waited nearly six more months before filing the instant motion on June 5, 2017. *Power* ECF No. 401; Civ. ECF No. 1.

16
Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

month delay rendered a motion to withdraw the reference untimely); *Stratton v. Vita Bella Group Homes, Inc.*, 2007 U.S. Dist. LEXIS 40562, *6–7 (E.D. Cal. May 24, 2007) (finding a motion to withdraw the reference untimely after one-year delay"). However, the Court need not resolve this issue because the Court finds that denial of the motion is warranted on other grounds. Nevertheless, at the very least, Facebook's unexplained delay of over three years weighs against withdrawing the reference.

In the adversary proceeding, Vachani's motion to dismiss is already fully briefed and ripe for decision. *See* Adv. ECF No. 7–9 (setting original hearing date for motion to dismiss on February 13, 2014). Withdrawing the reference would require this Court to set a new schedule and become familiar with this already briefed and long-pending motion, which could result in further delay. This delay would also cause further expenses for both parties. Thus, both the "undue delay" and "avoiding excessive costs" factors weigh against withdrawing the reference.

The interest in preventing forum shopping also weighs against withdrawing the reference. Because the instant case involves a "core" bankruptcy matter, both this Court and the Bankruptcy Court can enter final judgment, and thus there is a possibility that Facebook's motion could be motivated by a desire to obtain a more favorable forum. Indeed, Facebook argues that withdrawal of the reference is justified in part because "this Court is thoroughly familiar with the Debtor's litigation tactics, including his refusal to respond in a timely manner to this Court's orders and refusal to limit his arguments to issues this Court wants addressed." Civ. ECF No. 1-30, at 8. This argument raises the possibility that the motion for withdrawal of the reference is motivated in part by Facebook's belief that because this Court has previously ruled in favor of Facebook on other matters, this Court would respond more favorably to Facebook's argument than the Bankruptcy Court. *See In re Sula, Inc.*, 2016 WL 3090300, at *3 (C.D. Cal. May 31, 2016) (denying motion to withdraw reference because "the court has serious concerns that the instant Motion is nothing more than forum-shopping on the part of debtor"). Thus, in the instant case the interest in preventing possible forum shopping weighs against withdrawing the reference.

Finally, the interest in "ensuring uniformity of the administration of the bankruptcy estate"

17
Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

weighs against withdrawing the reference. Because the dischargeability of Vachani's debt is a "core" matter, "[t]he uniformity of bankruptcy administration would be adversely affected if this Court were to withdraw reference with respect to a claim more properly within the Bankruptcy Court's competence." *In re Rosales*, 2013 WL 5962007, at *7 (finding that uniformity factor weighed against withdrawing the reference); *see also In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) (holding that "questions of efficiency and uniformity will turn" on "whether the claim is core or non-core"). As discussed above, the Bankruptcy Court has administered Vachani's bankruptcy since 2012, and thus the Bankruptcy Court is a better position to determine this adversary proceeding within the context of what Facebook has called "unusually complex" bankruptcy proceedings. Bankr. ECF No. 167, at 4 ("This [bankruptcy] case has seen an extraordinary number of filings and events, including multiple defaults by the Debtor, dismissal and reinstatement, many, many amendments of the sworn schedules, and many proposed versions of a plan."). Thus, given the complex history of Vachani's bankruptcy proceeding and the Bankruptcy Court's expertise on the "core" issue involved in the adversary proceeding at issue, the Court finds that the uniformity factor weighs against withdrawing the reference.

In short, all four "other factors"—avoiding delay, avoiding excessive costs, preventing forum shopping, and ensuring uniformity of the administration of the bankruptcy estate—weigh against withdrawing the reference.

### C. Summary

In summary, the Court finds that each of the relevant factors weighs against withdrawing the reference. As a "core" matter, the adversary proceeding at issue is particularly within the Bankruptcy Court's competence, and Facebook has not met its burden of showing that efficiency or other factors justify withdrawing the adversary proceeding to this Court. *See Hupp*, 2017 WL 2703151, at *2 ("The burden of establishing the propriety of withdrawing the reference is on the party seeking withdrawal.") (citing *FTC v. First Alliance Mortgage Co.*, 282 B.R. 894, 902 (C.D. Cal. 2001)). Thus, withdrawal of the reference is not warranted in the instant case.

### IV. CONCLUSION

18
Case No. 17-CV-03184-LHK
ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE

For the foregoing reasons, the Court DENIES Facebook's motion to withdraw the reference to the Bankruptcy Court of *Facebook, Inc. v. Vachani*, Adv. Proc. No. 13-04226. The Clerk shall close the file of the instant civil case, *Facebook, Inc. v. Vachani*, Case No. 17-CV-03184.

**IT IS SO ORDERED.**

Dated: August 31, 2017

_____
LUCY H. KOH
United States District Judge